NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

DELSEA IRON WORKS, INC.,
Respondent.

No. 14490.

United States Court of Appeals
Third Circuit.

Argued Jan. 21, 1964.

Decided June 25, 1964.

James C. Paras, N.L.R.B., Washington, D. C. (Arnold Ordman, Gen. Counsel, Dominick L. Manoli, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, James C. Paras, Janet Kohn, Attys., N.L.R.B., on the brief), for petitioner.

Charles F. Jublow, President, Delsea Iron Works, Inc., Millville, N. J., for respondent.

Before BIGGS, Chief Judge, and FORMAN and GANEY, Circuit Judges.

GANEY, Circuit Judge.

The National Labor Relations Board found that the Delsea Iron Works, Inc. ("Company"), committed unfair labor practices in violation of § 8(a) (5) and (1) of the Labor Management Relations Act, 29 U.S.C.A. § 158(a) (5) and (1), by refusing to bargain with Local 676, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America ("Local 676"), and by interfering with its employees in the exercise of their rights guaranteed by § 7 of the Act. Delsea Iron Works, Inc., and Local 676, 140 N.L.R.B. 1316 (1963).

The local union had been certified as the exclusive bargaining representative of the Company's production, maintenance and truck driving employees. The matter is before us on petition of the Board for enforcement of its order requiring the Company to desist from continuing to commit those unfair labor practices. This is the Company's second time around.

The events which led to the Board's certification of Local 676 as the exclusive bargaining representative of the Company's employees were relevant to the Board's earlier determination that the Company had committed unfair labor

practices in disregard of § 8(a) (3) and (1) of the Act by discharging thirteen of its fifteen employees and by later refusing to reinstate eleven of them. The Board ordered the Company to offer reinstatement to the eleven employees with back pay, and to desist from discouraging membership in any labor organization of its employees by discriminating in regard to their employment, or interfering with its employees in the exercise of their rights to bargain collectively. Delsea Iron Works, Inc., and Local 676, 136 N.L.R.B. 453 (1962). In a *per curiam* opinion, the order was enforced. N.L.R.B. v. Delsea Iron Works, Inc., 316 F.2d 231 (C.A. 3, 1963). The Company did not appeal from the order of this court.

On May 8, 1961, thirteen of the Company's fifteen production employees went on strike in protest against what they considered as unsatisfactory working conditions at the Company's plant in Millville, New Jersey. At the time the strike was called the Company had not recognized any labor organization as the collective bargaining agent of its employees, a valid election within the preceding twelve-month period had not been held for the purpose of determining who should be the bargaining agent for that group of employees, and the Company was not a party to a currently operative collective bargaining agreement. The Company responded to the walkout by firing all thirteen of the striking employees. Thereafter, the Company hired men to replace the discharged employees. On May 10, the striking employees, under their own organization, began picketing the Company's plant. The pickets carried signs stating:

"Delsea Iron Works, Inc.
Unfair Substandard Conditions
Delsea Iron Works, Inc., Independent Labor Organization"

On May 15, after a representative group of the striking employees met with Local 676, the sign carried by the picketing employees read:

"Delsea Iron Works, Inc.
On Strike Local 676
International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America" [1]

On May 25, Local 676 sent a letter to the Company offering the return to work of eleven of the thirteen strikers. The Company turned down the unconditional offer claiming that they had been discharged along with two others.

On May 29, fourteen days after its sponsored picketing began, Local 676 petitioned the Board under § 9(c) (1) (A) (i) of the Act, 29 U.S.C.A. § 159(c) (1) (A) (i), to hold an election for the purpose of determining whether the employees of the Company wished to be represented for the purpose of collective bargaining by Local 676. On June 1, the Regional Director filed notice of his scheduling of a pre-election hearing for June 19. However, on June 9, at the time it filed a § 8(a) (3) charge (discriminating in regard to hiring to discourage membership in any labor organization), and a § 8(a) (1) charge (interfering with employees in the exercise of rights guaranteed by § 7 of the Act), Local 676 requested the Regional Director to withdraw the certification petition filed on May 29. The Company did not object to the request. On June 12, the Regional Director granted, without prejudice, the request for withdrawal, and ordered that notice of the representation hearing issued June 1, be withdrawn and the case closed.[2]

On June 21, the Company filed an unfair labor practice charge with the Board alleging that Local 676 had violated § 8

---

1. The Board found: "Picketing with this placard apparently continued every day thereafter except for June 8, 1961." Delsea Iron Works, Inc., and Local 676, 140 N.L.R.B. 1316, 1317 (1963).

2. Section 102.60 of the Board's Rules, 29 U.S.C.A.App. (Supp.1964) § 102.60, in part, provides: "Whenever the regional director * * * approves the withdrawal of any petition, the case shall be closed."

(b) (7) (C) of the Act by picketing for recognition "without a petition under § 9(c) being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing." [3] On June 23, Local 676 formally requested the Regional Director to reinstate its petition for election.

On July 19, the Regional Director sent each of the parties a letter informing them that he was rescinding his approval of Local 676's request for the withdrawal of its certification petition filed May 29 and was reinstating the petition. The letter did not indicate whether or not he was reinstating the petition as of May 29, the date it was filed. By letter dated July 25, he advised the parties first, that on the basis of the investigation made up to that time it appears appropriate to conduct an election by secret ballot "pursuant to § 8(b) (7) (C) and 9(c) of the Act, and § 102.77 of the Board's Rules and Regulations," [4] and second, that an election would be conducted among the production, maintenance and truck driving employees of the Company. The Company did not file with the Board, as provided for in § 102.80(c) of the Board's rules and regulations, a request for special permission to appeal the Regional Director's direction to hold an election. [5] On July 28, the Regional Director refused to issue a complaint against Local 676 pursuant to the Company's § 8(b) (7) (C) charge. He therefore dismissed the charge on the ground that the "reinstated" certification petition was a defense to such charge.

On August 1, the Regional Director issued a complaint pursuant to the § 8(a) (3) and (1) charges filed against the Company by Local 676 on June 9.

On August 11, the Company, apparently pursuant to § 101.24(a) of the Board's Rules,[6] appealed the dismissal of its § 8 (b) (7) (C) charge to the General Counsel of the Board on the ground that the Regional Director should not have directed a special or expedited election because allegedly all the essential conditions precedent to such an election had not been met. The General Counsel sustained the dismissal of the charge.

At the election held on August 21, twenty-four ballots were cast, two were against the local and the remaining twenty-two were challenged. Of the latter, eleven were cast by the employees who went on strike and eleven by their replacements. The Company contested the voting eligibility of the first eleven, while the local challenged the right of the second eleven, as provided for by § 102.69 of the Board's rules and regulations, to vote. The hearing on the ballot challenges was consolidated with the proceedings before the Board stemming from Local 676's § 8(a) (3) and (1) charges against the Company.

On March 27, 1962, following the Board's determination on March 21 that the discharging of the eleven employees engaging in the strike was an unfair labor practice, that those eleven were eligible to vote on August 5, 1961, the applicable eligibility date, and that the

3. On June 22, 1961, Local 676 filed a § 8(a) (5) refusal-to-bargain charge against the Company. The Regional Director, on July 20, granted Local 676's request to withdraw the charge.

4. 29 U.S.C.A.App. (Supp.1964) § 102.77.

5. Section 102.80(c) of the Board's Rules, 29 U.S.C.A.App. (Supp.1964), § 102.80 (c), provides:
   "(c) Where the regional director, pursuant to §§ 102.77 and 102.78, has determined that a hearing prior to election is not required to resolve the issues raised by the petition and has directed an expedited election, any party aggrieved may file a re-

quest with the Board for special permission to appeal from such determination. Such request shall be filed promptly in writing, and shall briefly state the grounds relied upon. * * * "

6. This section provides:
   "§ 101.24 Final disposition of a charge which has been pending investigation of the petitioner
   "(a) Upon the determination that the issuance of a direction of election is warranted on the petition, the regional director, absent withdrawal of the charge, dismisses it subject to an appeal to the general counsel in Washington, D. C."
   (29 U.S.C.A.App. (Supp.1964) § 101.24.)

eleven replacements were hired as a consequence of the unfair labor practice and therefore ineligible to vote,[7] the Regional Director opened the sealed ballots cast by those held to be eligible to vote. He found that all of them designated the local as the preferred bargaining agent. The Company accepted "under protest pending outcome of possible further litigation", the revised tally of ballots showing a union majority of eleven to two. Therefore, the Regional Director on March 29, 1962, certified Local 676 as the exclusive bargaining representative of the Company's maintenance, production and truck driving employees at the Company's Millville plant.

By letter dated March 30, 1962, Local 676 requested the Company to meet with it on April 5 in order to commence negotiations for a collective bargaining agreement regarding wages, hours and other conditions of employment. In response, the Company, on April 4, notified the local that it would not negotiate with it at that time. On April 19, Local 676 filed charges against the Company alleging violation of § 8(a) (5) and (1) of the Act.

On the basis of those charges, the Regional Director issued a complaint on May 11, 1962, against the Company. In its answer to the complaint the Company denies committing the § 8(a) (1) charge, but admits its refusal to bargain. As a defense to such refusal it asserts that the purported election and Local 676's certification were invalid for the reason that the Regional Director was without authority to direct the election, all the conditions essential either for a regular or a special election were not fulfilled, the persons casting ballots in favor of Local 676 were ineligible to vote, and "even if such persons had been eligible to vote, the outcome of the election cannot be determined without counting the votes of their permanent replacements that were challenged by the Union." The Board, on February 20, 1963, as indicated earlier, found that the allegations set forth in the complaint were substantiated by the evidence and applicable law.

In this enforcement proceeding the Company did not file a brief or present argument, but is willing to rely on the grounds set forth in its answer to the Regional Director's complaint.

It would appear from a plain reading of § 8(b) (7) (C) of the Act,[8] that the Regional Director, upon the filing of a certification petition by a labor organization at any time after it has commenced picketing for the purpose of gaining recognition, must forthwith initiate an election proceeding pursuant to the special or streamlined measures. However, the Board does not go along with a mechanical application of that section and insists that a petition not only be filed within a reasonable time not to exceed thirty days from the commencement of the picketing,

---

7. See Delsea Iron Works, Inc., and Local 676, supra, note 1, 136 N.L.R.B. at 462.

8. This section provides:
"(b) It shall be an unfair labor practice for a labor organization or its agents—
* * * * *
"(7) to picket or cause to be picketed * * * any employer where an object thereof is forcing or requiring an employer to recognize or bargain with a labor organization as the representative of his employees * * *:
* * * * *
"(C) where such picketing has been conducted without a petition under section 159(c) of this title being filed within a reasonable period of time not to exceed thirty days from the commencement of such picketing: *Provided,* That when such a petition has been filed, the Board shall forthwith, without regard to the provisions of section 159(c) (1) of this title or the absence of a showing of a substantial interest on the part of the labor organization, direct an election in such unit as the Board finds to be appropriate and shall certify the results thereof: *Provided further,* That nothing in this subparagraph (C) shall be construed to prohibit any picketing or other publicity for the purpose of truthfully advising the public (including consumers) that an employer does not employ members of, or have a contract with, a labor organization * * *."

but that it be in response to a § 8(b) (7) (C) charge if the special procedure is to be invoked.[9] Thus, if the labor organization files a certification petition, even though it is not in response to a § 8(b) (7) (C) charge, after the reasonable time has elapsed, the most the labor organization can expect is that an election pursuant to the regular procedure be conducted. The employer may object to the direction of an election on several grounds.[10] Or, unless he waives such right, which the Board's rules permit him to do, he may insist that the regular procedure be followed.[11]

Here, although a petition for certification was filed within the thirty-day period, the petition was withdrawn before the unfair labor practice charge was filed. We know of no law or rule which permitted the Regional Director to treat the reinstated petition as though it had been filed sometime within the thirty-day period, and left to remain on file thereafter. Nevertheless, we think the Board was correct in ruling against the Company.

In the first place, it is difficult for us to comprehend what information a preliminary hearing or hearings would have brought to light that was not already known by the Board. The Board had previously found, as set forth in its prior decision, that the Company was engaged in commerce within the meaning of the Act. 136 N.L.R.B., supra, at 457, and that Local 676 had made an adequate showing of interest in the unit found appropriate. Id., at 453, note 1. The Company has never disputed the appropriateness of the unit.

In the second place, when the Company received notice that an election would be handled under the expedited procedure, it could have, pursuant to § 102.80(c) of the Board's rules and regulations,[12] sought permission to appeal the Regional Director's direction to hold an election, or to hold an election under the expedited procedure. It did not do so. Instead, it appealed to the General Counsel the dismissal of its § 8(b) (7) (C) charge. The holding of an election, regular or special, in response to the filing of a certification petition, is not a valid ground for objecting to such dismissal. In addition, the Company did not file any objections to the revised tally of votes.[13] Under these circumstances, the Company must be deemed to have relinquished any right it might have had to object to the Regional Director's directing of a special election and the conducting of the proceeding under the expedited procedure.

The same conclusion holds true for the Company's contention that the votes of the eleven replacements challenged by Local 676 should have been counted in the revised tally of votes. Moreover, there has been no showing whether those votes were cast for or against Local 676. The record before us does not reveal whether the Company requested the Regional Director to open those eleven sealed ballots. Hence the Company has not even demonstrated that those ballots, if counted, would have had any effect on the outcome of the election.

9. See § 101.23(a) (4) of the Board's Statement of Procedure, 29 U.S.C.A.App. (Supp.1964) § 101.23(a) (4); 2 C.C.H. Labor Law Rep. ¶2767.

10. See 2 C.C.H. Labor Law Rep. ¶¶2705–2740.

11. See §§ 102.60 to 102.72 of the Board's Rules and Regulations, 29 U.S.C.A.App. (Supp.1964) §§ 102.60 to 102.72.

12. Supra, note 6.

13. Section 102.69(g) of the Board's Rules and Regulations, 29 U.S.C.A.App. (Supp. 1964) § 102.69(g), provides:

"(g) In any such case in which the regional director or the Board, upon a ruling on challenged ballots, has directed that such ballots be opened and counted and a revised tally of ballots issued, and no objection to such revised tally is filed by any party within 3 days after the revised tally of ballots has been furnished, the regional director shall forthwith issue to the parties certification of the results of the election, including certification of representatives where appropriate, with the same force and effect as if issued by the Board. The proceedings shall thereupon be closed."

There was sufficient evidence on the whole record to support the Board's finding that the Company had violated § 8(a) (1) of the Act.

Accordingly, the order of the Board will be enforced.